NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLES BUFFINGTON, *Appellant.*

No. 1 CA-CR 19-0449
FILED 6-15-2021

Appeal from the Superior Court in Yavapai County
No. P1300CR201700322
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

The Zickerman Law Office PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N, Judge**:

¶1        Charles Buffington appeals the superior court's judgment of guilt and sentencing on various offenses related to sex trafficking, prostitution, and pandering.  For the following reasons, we affirm.

## BACKGROUND

¶2        In November 2015, Buffington and his friend William Wilson, together with two females, S.F. and K.A., met at a hotel and engaged in sexual activity.  At the time, K.A. was 16 years old.  Buffington and Wilson later persuaded S.F. and K.A. to work as prostitutes, posting provocative pictures of S.F. and K.A. on websites commonly used to solicit "johns" and arranging for prostitution "dates" using discreet phone applications.  S.F. and K.A. engaged in frequent acts of prostitution under Buffington and Wilson's direction for approximately seven months.

¶3        In September 2016, an adult victim (S.C.) informed the police about this prostitution operation.  The State charged Buffington with two counts of sex trafficking (Counts 1 and 3), two counts of conspiracy to commit sex trafficking (Counts 2 and 4), child prostitution (Count 5), conspiracy to commit child prostitution (Count 6), three counts of conspiracy to commit receiving earnings of a prostitute (Counts 7–9), one count of receiving earnings of a prostitute (Count 10), conspiracy to commit transporting persons for purpose of prostitution or other immoral purpose (Count 11), and four counts of conspiracy to commit pandering (Counts 12–15).

¶4        At trial, the superior court granted Buffington's motion for judgment of acquittal on Count 8 and dismissed Count 15 on the State's motion.  The jury acquitted Buffington of Counts 1 and 3 but convicted him of the remaining charges.  The court sentenced Buffington to an aggregate prison term of 19.5 years and he timely appealed.

## DISCUSSION

### A.    Mens Rea for Child Prostitution

**¶5**        We review issues of statutory interpretation de novo. *State v. Dann*, 220 Ariz. 351, 369, ¶ 96 (2009). We review the superior court's denial of a jury instruction for an abuse of discretion, but we review de novo whether jury instructions accurately state the law. *State v. Johnson*, 212 Ariz. 425, 431, ¶ 15 (2006).

**¶6**        As stated in A.R.S. § 13-3212(A)(1),[1] a person commits child prostitution by "knowingly . . . causing any minor to engage in prostitution." Minor is defined as "a person under the age of eighteen years." A.R.S. § 1-215(21). The superior court instructed the jury that "[t]he crime of Child Prostitution requires proof that the defendant knowingly caused a minor to engage in prostitution," mirroring § 13-3212(A)(1). The court also told the jury "[i]t is not a defense to the charges involving a Minor or a Child that the defendant did not know or had no reason to know the age of the Minor or Child."

**¶7**        Buffington argues the "knowingly" mental state contained in § 13-3212(A)(1) necessarily applies to each element of the offense. He contends the superior court erred by (1) denying his request to instruct the jury the State was required to prove he "knew or should have known" K.A. was a minor for Counts 5 and 6, and (2) sentencing him to consecutive prison terms on those counts because the State failed to prove he knew K.A.'s age.

**¶8**        This issue, however, was recently addressed by this court in *State v. Hood*, 251 Ariz. 57 (App. 2021). In *Hood*, we held that the crime of child prostitution does "not require proof that a defendant knew the victim was a minor at the time of the sexual conduct." *Id*. at 59, ¶ 1. We reasoned that the plain language of § 13-3212(A)(1) "only requires proof that the defendant intentionally or knowingly engaged in sexual conduct with the

---

[1]        When Buffington committed these crimes, § 13-3212 used the term "child prostitution" to describe the offense. Effective August 9, 2017, the legislature amended the statute and changed the name of the offense to "child sex trafficking." 2017 Ariz. Sess. Laws, ch. 167, § 10 (1st Reg. Sess.). Because the amendment did not substantively alter the statutory provisions material to this decision, we cite the current version of the statute. For consistency with the record, however, we use "child prostitution" to describe the offenses in this case.

victim," and "[h]ad the legislature intended to require the State to prove a defendant knew the victim was a minor, . . . it would have said so explicitly in the statute." *Id.* at 60, ¶ 9 (citing *State v. Gamez*, 227 Ariz. 445, 450, ¶ 30 (App. 2011)). We see no reason to depart from this analysis.

**¶9** Because knowledge of a victim being a minor is not an element of § 13-3212(A)(1), the superior court's jury instructions accurately stated the law. Likewise, the court did not err in imposing consecutive sentences on Counts 5 and 6.

## B. Racial Composition of the Jury

**¶10** Buffington, who is African American, argues he was "unduly prejudiced by an all-white jury pool." We review constitutional challenges de novo, *Dann*, 220 Ariz. at 373, ¶ 127, but we review arguments raised for the first time on appeal for fundamental, prejudicial error, *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶11** We first note that transcripts of the voir dire proceedings were not made part of the appellate record, and the available record does not disclose the racial composition of the venire. "It is the duty of counsel who raise objections on appeal to see that the record before us contains the material to which they take exception. Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court." *State v. Zuck*, 134 Ariz. 509, 512–13 (1982).

**¶12** During voir dire, Buffington objected "to the jury pool as having no minorities" and "nary a black person at all." The superior court first clarified that "[t]here was, in fact, one who asked to be excused for cause and a number of other Hispanics, a couple of who asked to be excused for cause, so I did make note of that." The court also pointed out that the minority venire members were excused because the jurors "said they couldn't be fair and impartial" and neither party objected. Buffington did not move to strike the panel, nor did he raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).

**¶13** Buffington does not challenge the superior court's decision to excuse various minority venire members for cause. Regardless, the court acted within its discretion by dismissing jurors who could not be fair and impartial. *See* Ariz. R. Crim. P. 18.4(b) (stating that the superior court must excuse a potential juror if there is a "reasonable ground to believe" the juror "cannot render a fair and impartial verdict"); *State v. Medina*, 232 Ariz. 391, 403, ¶ 38 (2013) (striking a prospective juror for cause is appropriate if the

juror's opinions would substantially impair the performance of the juror's duties).

**¶14** Despite not raising a *Batson* challenge at trial, on appeal Buffington relies on *Batson* to contend he was unduly prejudiced by the composition of the venire because "peremptory challenges may [not] be used to discriminate against and eliminate potential jurors on the basis of sex, race, ethnicity, or religion." We review his argument only for fundamental, prejudicial error. *See Escalante*, 245 Ariz. at 142, ¶ 21.

**¶15** A peremptory strike to exclude a potential juror solely because of race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 89. A *Batson* challenge is composed of three steps: (1) the defendant must make a prima facie showing of racial discrimination; (2) if such a showing is made, the prosecutor must provide a race-neutral reason for the strike; (3) if the prosecutor provides a facially neutral basis, the "court must determine whether 'the defendant has established purposeful discrimination.'" *State v. Newell*, 212 Ariz. 389, 401, ¶ 53 (2006) (citation omitted).

**¶16** First, Buffington cites no evidence that the State peremptorily struck any minority venireperson, much less that the prosecutor did so for a discriminatory purpose. Buffington therefore fails to establish a prima facie case that the prosecutor violated *Batson* by excluding a juror on the basis of race. *See id.*

**¶17** Second, to the extent Buffington argues he was prejudiced solely because the empaneled jury had no minority members, our supreme court has rejected that proposition. *See State v. Tucker*, 118 Ariz. 76, 80 (1978) (holding that "[t]he fact that appellant was tried by an all[-]white jury does not, in itself, give grounds for a claim of error"). Moreover, "[t]he defendant is not entitled to a jury that is composed of the exact proportion of his race as exists in the general population. All that is required is a jury selected by a process from which members of his [or her] race are not systematically excluded." *State v. Williams*, 111 Ariz. 175, 178 (1974).

**¶18** Buffington neither alleges nor demonstrates that Yavapai County engages in systematic exclusion of minority jurors when selecting its juries. *See id.* Nonetheless, he asserts that racial underrepresentation in the jury selection process violated his right to a fair and impartial jury.

**¶19** The Sixth Amendment right to a fair and impartial jury requires that a venire consist of a representative cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 358–59 (1979). A defendant

must meet a three-prong test to establish a prima facie violation of the fair-cross-section requirement, proving: (1) the group alleged to be excluded is "distinctive" in the community, (2) the group's representation "in venires from which juries are selected is not fair and reasonable" in proportion to the community, and (3) the underrepresentation results from "systematic exclusion" in the jury-selection process. *Id*. at 364. Buffington makes no showing at all under the second and third prongs. *See id.* Thus, we reject Buffington's contention that underrepresentation in his trial violated his right to a fair jury. *See id.*; *see also State v. Doerr*, 193 Ariz. 56, 65, ¶ 40 (1998) ("The Sixth Amendment guarantees a fair and impartial jury, but not one having a specific makeup.").

**¶20**        Finally, Buffington's general assertion that the jurors were inherently biased, without citing any supporting evidence from the record, is insufficient to establish prejudice. *See State v. Tison*, 129 Ariz. 526, 535 (1981) ("Unless there are objective indications of jurors' prejudice, we will not presume its existence."); *State v. Arnett*, 119 Ariz. 38, 50 (1978) ("[U]nless the record affirmatively shows that . . . a fair and impartial jury was not secured, the conviction must be affirmed.").

## CONCLUSION

**¶21**        We affirm Buffington's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA